**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Raymond CONAWAY, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 22, 2001.

Filed Jan. 15, 2002.

Paul W. Muller, Public Defender, Harrisburg, for appellant.

Michael A. Consiglio, Asst. Dist. Atty., Harrisburg, for Commonwealth, appellee.

Before DEL SOLE, President Judge, MUSMANNO and HESTER, JJ.

MUSMANNO, J.

¶ 1 Appellant Raymond Conaway ("Conaway") appeals from the judgment of sentence entered following his conviction of possession with intent to deliver a controlled substance and possession of drug paraphernalia.[1] We affirm.

¶ 2 The pertinent facts and procedural history of this case are as follows. On February 8, 2001, a jury found Conaway guilty of the above-mentioned offenses. The jury also found co-defendant Glennatta Conaway ("Glennatta"), Conaway's sister, guilty of possession with intent to deliver a controlled substance, unlawful

1. 35 P.S. §§ 780–113(a)(30) and (32), respectively.

2. 35 P.S. § 780–113(a)(31).

possession of drug paraphernalia, and unlawful possession of a small amount of marijuana.[2]

¶ 3 In May 2000, Conaway rented Apartment No. 4 located at 3031 Walnut Street. On the morning of May 18, 2000, members of the U.S. Marshals Fugitive Task Force ("Task Force") attempted to execute an arrest warrant for Conaway at that address, but only found Glennatta on the premises. Glennatta consented to a search of the apartment. Upon searching, the Task Force found a small amount of marijuana, "blunts," and razor blades on the coffee table in plain view. Glennatta claimed responsibility for the marijuana. The Task Force also noticed that Glennatta appeared to be hiding something under her arms. Upon further examination, the Task Force discovered that Glennatta was hiding a dinner plate with numerous bags containing suspected crack cocaine. At that point, the Task Force arrested Glennatta.

¶ 4 After Glennatta gave her consent to search the remainder of the apartment, she provided the Task Force with telephone numbers at which Conaway could be reached.[3] The Susquehanna Township police and members of the Dauphin County Drug Task Force ("Dauphin County Task Force") were then contacted and responded to the scene. During the search of the remainder of the apartment, the Dauphin County Task Force discovered sixty (60) individually packaged pieces of crack cocaine on a dinner plate on top of the kitchen counter. On the same counter, they found an additional twenty (20) pieces of suspected crack cocaine that was packaged identically to the sixty (60) packages.

3. The Task Force cross-referenced these telephone numbers with Dauphin County Communications to obtain addresses.

In the kitchen, there was also a sandwich bag containing marijuana seeds, a package of mini-Ziploc bags, and the remains of sandwich bags, from which the corners had been torn off to package the crack cocaine ("corner bags"). The Dauphin County Task Force also discovered two (2) handguns, a .22 caliber pistol, and a 9 millimeter pistol under a futon bed. The serial number of the 9 millimeter pistol was obliterated.

¶ 5 Based upon the cross-reference of the telephone numbers provided by Glennatta, the Task Force was dispatched to a location on Brokas Drive in Swatara Township to locate Conaway's car. There, they located a BMW vehicle thought to belong to Conaway, and found him in the driver's seat in a reclined position. Upon Conaway's exit from the vehicle, he was handcuffed and placed under arrest. A search of the vehicle revealed a large baggie, which contained several small pinkish baggies that appeared to contain crack cocaine. The large baggie was located on the passenger's seat under a shirt. It was later determined that this baggie contained thirteen (13) small baggies of crack cocaine with a value of twenty dollars ($20.00) each.

¶ 6 The Dauphin County Task Force charged Conaway with possession with intent to deliver a controlled substance and possession of drug paraphernalia with regard to the items discovered in the apartment and in his vehicle. Glennatta was charged with possession with intent to deliver a controlled substance, possession of drug paraphernalia, possession of marijuana, and altering/obliterating marks of identification.[4]

¶ 7 At trial, Marchand Pendleton of the Task Force testified that Glennatta stated to him that "my brother got me into some stuff," and that she had repeated this statement to him several times. N.T., 2/5/01–2/8/01, at 248. He further testified that Glennatta told him that she had last seen Conaway the previous evening at the apartment and claimed that the crack cocaine found in the apartment belonged to Conaway. N.T., 2/5/01–2/8/01, at 248–49.

¶ 8 Glennatta testified that she had assumed that the crack cocaine belonged to Conaway. N.T., 2/5/01–2/8/01, at 224, 227. She also testified that when she told the Task Force that Conaway had gotten her in trouble, she was referring to his failure to appear in court, which resulted in the issuance of the warrant and the appearance of the Task Force at her apartment. N.T., 2/5/01–2/8/01, at 224–25.

¶ 9 A jury found Conaway guilty of all counts. On March 29, 2001, the trial court sentenced Conaway to an aggregate prison term of three (3) to ten (10) years and a ten thousand dollar ($10,000) fine. Conaway filed a Motion for modification of the sentence, which the trial court denied on May 1, 2001. Conaway then timely filed a Notice of appeal.[5]

---

4.  42 Pa.C.S.A. § 6117.

5.  On May 23, 2001, the trial court issued an order directing Conaway to file a concise Statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b) no later than fourteen (14) days after the entry of the Order and to file a brief in support of the issues asserted. Conaway filed a Motion to extend time to file his Statement, which the trial court denied. Upon subsequent conversation with Conaway's newly appointed counsel, the trial court granted Conaway a two (2) week extension to file his Statement. Conaway's counsel timely filed his Statement but did not file a brief in support because he did not have the trial transcripts. Thus, the trial court did not file its Memorandum Opinion pursuant to Pa.R.A.P.1925(b) because it viewed the failure of Conaway's counsel to file a brief in support as a waiver of all issues.

¶ 10 On appeal, Conaway raises the following issues:

1. Whether Conaway failed to preserve his claims for appeal when he did not file a brief in support of the statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)?

2. Whether the evidence was insufficient for a jury to convict Conaway of possession with intent to distribute a controlled substance rather than simple possession of a controlled substance?

Brief for Appellant at 4.

■ ¶ 11 We will first address the issue of waiver resulting from Conaway's failure to file a brief in support of his Statement. Pa.R.A.P.1925(b) provides that "the [trial] court may enter an order directing the appellant to file of record in the [trial] court and serve on the trial judge a concise statement of the matters complained of on appeal no later than 14 days after entry of such order." Pa.R.A.P.1925(b). Rule 1925(b) further provides that a failure to comply with such order may be considered by this Court as a waiver of all objections to the order, ruling or other matter complained of on appeal. Nowhere in this rule is there a requirement that the appellant must file a supporting brief and that a failure to do so would constitute a waiver of all issues, as the trial court suggests. *See* Trial Court Memorandum and Order, 8/3/01, at 1–2.

¶ 12 Therefore, although Conaway did not file a supporting brief as ordered by the trial court, we conclude that his challenge to the sufficiency of the evidence is not waived because Conaway fully complied with Rule 1925(b).

¶ 13 Conaway contends that the evidence presented at trial was insufficient for the jury to convict him of possession with intent to deliver a controlled substance rather than simple possession of a controlled substance. Conaway argues that the Commonwealth failed to produce sufficient evidence at trial as to why the quantity of crack cocaine found in the vehicle was more consistent with delivery for sale rather than for personal use.

■ ¶ 14 In reviewing a challenge of the sufficiency of the evidence, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth, as the verdict winner, to determine whether the jury could have found that every element of the offenses was proven beyond a reasonable doubt. *Commonwealth v. Simpson*, 562 Pa. 255, 264, 754 A.2d 1264, 1269 (2000). The Commonwealth may sustain its burden of proof on circumstantial evidence alone. *Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa.Super.2000) (*en banc*) (quoting *Commonwealth v. Harper*, 485 Pa. 572, 576, 403 A.2d 536, 538 (1979)). In *Aguado*, this Court further stated:

> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Id.* (citation omitted).

■ ¶ 15 To convict a person of possession of a controlled substance with the intent to deliver, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. *Aguado*, 760 A.2d at 1185; 35 P.S. § 780–113(a)(30). The intent to deliver may be inferred from an examination of the facts and circumstances surrounding

the case. *Aguado*, 760 A.2d at 1185. Factors to consider whether the defendant possessed the drugs with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant. *Id.*

 ¶ 16 Applying our standard of review to this case, we conclude that the evidence was sufficient to sustain Conaway's conviction for possession of a controlled substance with the intent to deliver. Here, the parties stipulated that the substances found as a result of the apartment and vehicle searches were crack cocaine and marijuana. At trial, the Commonwealth presented evidence that the Task Force found thirteen baggies of crack cocaine next to Conaway in his vehicle. In addition, Conaway rented the apartment in which sixty baggies of crack cocaine were found. Evidence was also presented that Glennatta told the police that those sixty baggies belonged to Conaway. N.T., 2/5/01–2/8/01, at 248–49. This evidence was sufficient for the jury to find that Conaway was in possession of the drugs.

¶ 17 However, Conaway contends that there was no evidence presented to suggest that the quantity of crack cocaine found as a result of the searches was inconsistent with personal use. We disagree.

¶ 18 The Commonwealth presented two witnesses who testified that the corner bags and baggies of crack cocaine, which were found at the apartment and in the vehicle, were worth approximately $20.00 each. There was also testimony that the usual street purchase of crack cocaine was approximately $20.00 to $40.00. Based on this testimony, the total amount of crack cocaine found represented approximately 36 to 73 individual purchases. Furthermore, the police found no drug paraphernalia in Conaway's vehicle. Thus, we conclude that this evidence was sufficient to

establish that Conaway possessed the crack cocaine with the intent to deliver. *See Aguado*, 760 A.2d at 1185 (citing) *Commonwealth v. Torres*, 421 Pa.Super. 233, 617 A.2d 812 (1992) (holding that evidence of individually wrapped bags of cocaine and the lack of paraphernalia for personal use of crack cocaine gave rise to an inference of intent to deliver); *Commonwealth v. Ramos*, 392 Pa.Super. 583, 573 A.2d 1027, 1033–34 (1990) (holding that the defendant's possession of nine individually prepackaged rocks of crack cocaine coupled with defendant's act of placing the drugs beneath a parked car was sufficient evidence of an intent to deliver).

¶ 19 Judgment of sentence affirmed.