J-S57003-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DWAYNE WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 565 EDA 2013 |

Appeal from the Judgment of Sentence February 1, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0002086-2012

BEFORE: DONOHUE, MUNDY and STABILE, JJ.

MEMORANDUM BY DONOHUE, J.: **FILED OCTOBER 01, 2014**

Appellant, Dwayne Williams ("Williams"), appeals from the judgment of sentence dated February 1, 2013, following his convictions after a non-jury trial of possession of a controlled substance with the intent to deliver ("PWID"), 35 P.S. § 780-113(a)(30), and criminal conspiracy, 18 Pa.C.S.A. § 903(a). Williams contends that the evidence was not sufficient to support these convictions. For the reasons that follow, we affirm the judgment of sentence.

In its written opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, the trial court provided the following brief summary of the evidence introduced at trial:

> On September 29, 2011, Police Officer Mich Vech was conducting undercover narcotics surveillance when he observed [Williams] in the 1500 block of West Duncannon Street of Philadelphia. [Williams]

was standing at the corner and approximately ten to fifteen feet away from a blue and white passenger van. (N.T., 10/4/12 at 9, 10).

Approximately fifteen minutes after arriving on location, Officer Vech observed [Williams] wave over an unidentified male and initiate a conversation with him. After speaking with the male, [Williams] turned toward his co-Defendant Rafael Ingram (who was standing next to the passenger van), yelled at him and then made a signal to Ingram by raising his hand and putting up his index finger as to indicate the number "one." At this point, the male walked over to co-defendant Ingram and handed him an unknown amount [of] United States currency. Upon receiving the currency, Ingram entered the van through the passenger side door. Shortly thereafter, Ingram emerged from the van and reached into his right pants pocket. He handed the male a plastic bag filled with a green, leafy, seedy substance, which Officer Vech believed to be marijuana. Officer Vech then observed the male remove the contents from the bag and roll it into a cigar, which he smoked on location next to the van. (N.T. 10/4/12 at 11-13).

Ten minutes later, [Williams] flagged down another male, later identified as Matthew Henson, who was walking towards Duncannon Street. [Williams] engaged Henson in a brief conversation and then turned toward co-defendant Ingram (who was still at the van) and shouted to him. While he was doing this, [Williams] directed Henson to the van by pointing his index finger. Henson walked towards Ingram and handed him an unknown amount of United States currency. Upon receipt of the currency, Ingram entered the van and emerged shortly thereafter. Ingram handed Henson a small clear bag filled with marijuana []. (N.T. 10/4/12 at 12-13).

A few minutes after this transaction, Henson began to walk away from the van. While walking away he

also started to remove the contents of the plastic bag and roll it into a cigar blunt. At this time, Officer Vech relayed flash information to his backup officers to make arrests. Officer Johnson stopped Henson at 1400 Duncannon Street. Prior to stopping Henson, Officer Johnson observed him drop a lit, half-smoked marijuana blunt onto the ground. After placing Henson in custody, Officer Johnson recovered the blunt, which later tested positive as marijuana. Just prior to arresting co-Defendant Ingram, Officer David Brzyski observed him throw two sandwich bags over his left shoulder and onto the floor of the backseat of the van. One of the bags contained 1.04 grams of loose marijuana. [Williams] was arrested but no money or narcotics were recovered from him. (N.T. 10/4/12 at 13-14, 39-40, 44).

The trial court credited the testimony of the police officers based on their demeanor, their manner of testifying, and the corroborated testimony.

Trial Court Opinion, 10/29/2013, at 1-2.

Based upon this evidence, the trial court found Williams guilty of PWID and criminal conspiracy and sentenced him to five years of probation on each charge, to be served concurrently. This appeal followed, in which Williams raises a single issue for our consideration, namely whether the evidence was sufficient to support his convictions. Williams argues that the evidence did not prove that anyone ever handed him any money or that he ever supplied any marijuana to anyone. Williams' Brief at 8. He further contends that no money, drugs, or automobile keys were found on his person at the scene, and that no evidence demonstrates any intent on his

part to commit an unlawful act or to agree with Ingram to commit an unlawful act. *Id.*

We begin by setting forth our standard of review when reviewing a sufficiency of the evidence claim:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the factfinder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Kimmel*, __ A.3d __, __, 2014 WL 4258819, at *6 (Pa. Super. Aug. 29, 2014) (quoting *Commonwealth v. Olsen*, 82 A.3d 1041, 1046 (Pa. Super. 2013)).

To sustain a conviction of criminal conspiracy:

> The Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3)

- 4 -

an overt act done in furtherance of the conspiracy. Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

Additionally, an agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Jones*, 874 A.2d 108, 121–22 (Pa. Super. 2005) (internal citations and quotation marks omitted).

When viewed in the light most favorable to the Commonwealth as verdict winner, as our standard of review requires, the evidence here was sufficient for the trial court, as the finder of fact, to determine that an agreement existed between Williams and Ingram to sell marijuana. The testimony of the police officers established that Williams and Ingram acted together in concert, with Williams identifying and attracting customers and then directing them to Ingram to complete the transactions. Williams' shouts and hand signals to Ingram constituted overt acts in furtherance of the conspiracy, and his coordinated efforts with Ingram established both the agreement with Ingram to sell marijuana and his shared criminal intent with Ingram to do so. *See, e.g.*, *Commonwealth v. Murphy*, 844 A.2d 1228, 1239 (Pa. 2004) ("[W]e find, as did the Superior Court, that the jury could

have found that Murphy and Rivas had an agreement whereby Murphy would screen drug buyers before introducing them to Rivas based on Murphy's acts of questioning the trooper and calling out to Rivas, and the evidence that Rivas knew upon being called by Murphy that the trooper was interested in buying drugs.").

For a conviction of PWID, the evidence must show beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. *Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (Pa. Super. 2005); *Commonwealth v. Conaway*, 791 A.2d 359, 362 (Pa. Super. 2002). While it is true, as Williams argues, that no evidence established either that he himself ever possessed marijuana (either actually or constructively) or completed an exchange of currency for marijuana, he was still properly convicted of PWID. As set forth hereinabove, the evidence demonstrated the existence of a conspiracy with Ingram to distribute marijuana, and thus Williams is responsible for all of Ingram's actions in furtherance of the conspiracy -- including Ingram's actual possession of marijuana and his sale of the same in street transactions. *See, e.g.*, *Commonwealth v. Melvin*, ___ A.3d ___, ___, 2014 WL 4100200, at *30 (Pa. Super. Aug. 21, 2014); *Commonwealth v. Murphy*, 795 A.2d 1025, 1038 (Pa. Super. 2002) ("Even if the conspirator did not act as a principal in committing the underlying crime, he is still

criminally liable for the actions of his coconspirators in furtherance of the conspiracy."), *affirmed*, 844 A.2d 1228 (Pa. 2004).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/2014