J-S34013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MATTHEW AMOS FREEMAN, | |
| Appellant | No. 2139 MDA 2014 |

Appeal from the Judgment of Sentence July 2, 2014
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0002107-2012

BEFORE:  BOWES, OTT and STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 28, 2015**

Matthew Amos Freeman appeals from the judgement of sentence of fifteen to thirty months imprisonment after he was convicted of PWID and possession of paraphernalia.  We affirm.

On August 29, 2012, Waynesboro Police Detective Bryan Chappell conducted an investigation in conjunction with the Franklin County Drug Task Force into alleged drug trafficking in Waynesboro, Pennsylvania.  N.T., 5/30/14, at 18.  The investigation began on August 20, 2012, after Detective Chappell received information from the Pennsylvania State Police that the occupants of 433 Hamilton Avenue had been purchasing large quantities of growing equipment and material that was consistent with a marijuana growing operation.  *Id*. at 20.  Detective Chappell testified that

he arrived at the address around 4:00 a.m. and immediately smelled a strong odor of fresh marijuana emanating from a large fifth-wheel-style camper that was parked in the driveway.[1] *Id*. An electrical extension cord connected the camper to the residence. *Id*. at 21.

Detective Chappell left the scene, contacted two other members of the task force, and returned with them to the home at 10:00 a.m. *Id*. at 22. Again, he noticed the odor of marijuana emanating from the trailer. *Id*. The officers knocked on the door to the camper but no one answered. Detective Chappell walked over to the house and made contact with Teri Rihel, the owner of the residence, and inquired if anyone lived in the camper. *Id*. at 22, 48. Ms. Rihel told the officers that Appellant was living in the camper, and after indicating that she did not have any keys to the camper and could not let the officers inside, she helped them contact him. *Id*. at 22, 25. Once Appellant exited the camper, the officers entered to make sure that no one else was inside. *Id*. at 23. One officer remained on the scene to secure Appellant and the evidence while Detective Chappell obtained a search warrant. *Id*.

Upon his return, Detective Chappell executed the warrant and searched the camper. *Id*. at 23-24. He testified that he believed the

_____

[1] A fifth wheel camper is a trailer unit that connects to the tow vehicle by way of a special hitch directly above the rear axle. http://changingears.com/rv-sec-learn-type-fw.shtml

camper had been used by Appellant to grow, dry, and store fresh marijuana and also stated that the amount of marijuana seized from the camper totaled 3.2 pounds. *Id*. at 26-38, 42. In addition, Detective Chappell found devices used to smoke marijuana, a set of digital scales, racks to dry and store fresh marijuana, a marijuana shredder, and eleven individually wrapped bags of marijuana in a microwave. *Id*. at 27-28, 42. Each individually wrapped bag weighed approximately one ounce, a common weight at which marijuana is distributed. *Id*. at 65. The search also revealed growing equipment such as lighting, ventilation, and water systems for the marijuana plants. *Id*. at 52.

Jason Taylor, a detective with the Franklin County District Attorney's Office, testified as an expert witness for the Commonwealth and confirmed Detective Chappell's accounting of the weight of the individually wrapped bags found in the microwave as well as the total seized amount of marijuana. *Id*. at 77, 80. Detective Taylor also testified that Appellant admitted to him during the interdiction that he had intended to deliver the eleven one-ounce bags of marijuana to Ryan Dover, whom Detective Taylor had previously investigated for drug crimes. *Id*. at 79, 86. Detective Taylor opined that Appellant possessed the marijuana for distribution. *Id*. at 80.

Appellant declined to testify or call any witnesses, and a jury convicted him of one count of PWID and one count of possession of drug paraphernalia. The trial court imposed fifteen to thirty months incarceration

for PWID and a concurrent term of six to twelve months for possession of paraphernalia.[2]

Five days after trial, Appellant's counsel filed a petition to withdraw from this case and current counsel was appointed to represent him.

_____

[2] Instantly, the trial court found that the mandatory minimum sentence of twelve month's imprisonment outlined in 18 Pa.C.S. § 7508(a)(1)(i) applied in this case since the jury issued a special verdict that determined beyond a reasonable doubt that Appellant possessed less than two but more than ten pounds of marijuana. **See** N.T. Sentencing, 7/2/14, at 10-12.

Section 7508 is among several mandatory minimum sentencing statues in Pennsylvania that this Court has determined to be unconstitutional in their entirety under **Alleyne v. United States**, __ U.S. __, 133 S.Ct. 2151, 2155 (2013) (holding "any fact that increases the mandatory minimum is an "element" that must be submitted to the jury."). **See Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*); **Commonwealth v. Valentine**, 101 A.3d 801 (Pa.Super. 2014). In **Commonwealth v. Fennell**, 105 A.3d 13 (Pa.Super. 2014), we opined that § 7508 would be unconstitutional even where, as here, a jury determined the weight of the contraband beyond a reasonable doubt. Recently, in **Commonwealth v. Hopkins**, No. 98 MAP 2013 (Pa. filed June 15, 2015), our Supreme Court reaffirmed this general position regarding special verdicts in relation to the mandatory minimum sentences entered pursuant to 18 Pa.C.S. § 6317(a) concerning PWID within 1,000 feet of a school.

Notwithstanding the settled unconstitutionality of § 7508, we do not vacate the judgment of sentence entered in the case at bar. Although the trial court found § 7508 applicable in this case, the court did not impose the mandatory minimum sentence of twelve months imprisonment. Instead, the trial court imposed a standard range sentence of fifteen to thirty months imprisonment based upon the offense gravity score and Appellant's prior record score. N.T, 07/02/14, at 12-13 ("[T]he court in its discretion under what we believe are the correct guidelines for this circumstance[--] [t]hat is a standard range of 12 to 18 months[--] imposed sentence of 15 [to 30] months on count one."). As the trial court imposed the judgment of sentence based upon its discretion under the sentencing guidelines rather than the constitutionally infirm statute, Appellant's sentence is not illegal.

Appellant filed a motion for post-sentence relief alleging that the jury's verdict was against the weight of the evidence presented at trial and challenging the discretionary aspects of the judgment of sentence. The latter claim asserted that the sentence was excessive in light of Appellant's rehabilitative needs, and therefore required a downward modification. Appellant also asserted that he was eligible for the Recidivism Risk Reduction Incentive Program ("RRRI"). 61 Pa.C.S. §§ 4501-4512. On December 15, 2014, the trial court denied all of the issues raised in the motion. As it relates to RRRI, the trial court stated concluded that Appellant was disqualified from entry into the RRRI program due to a 2002 misdemeanor simple assault conviction in Texas. *See* Trial Court Opinion, 12/05/14, at 10.

A notice of appeal and concise statement of errors complained of on appeal were subsequently filed with the Superior Court. Appellant presents three issues for our review.

1. Was there insufficient evidence to conclude that the Appellant intended to manufacture or deliver a controlled substance?

2. Did the trial court err in denying Appellant's post sentence motion because the jury's verdict against the above-named Appellant was so against the weight of the evidence as presented at trial so as to shock one's sense of justice?

3. Did the trial court abuse its discretion by imposing an unduly harsh and unreasonable sentence because the trial court failed to consider Appellant's rehabilitative needs versus the public's safety?

Appellant's Brief at 7.

First, Appellant challenges the sufficiency of the evidence that the Commonwealth presented in support of its case against him. *Id*. at 22. He argues that testimony given at trial by witnesses for the Commonwealth failed to establish that he intended to deliver or manufacture a controlled substance. *Id.*

When reviewing a sufficiency of the evidence claim, the Superior Court must determine whether, after reviewing all of the trial evidence and reasonable inferences that could be drawn in favor of the Commonwealth, the jury could have found that each element of the offense was proven beyond a reasonable doubt. ***Commonwealth v. Carpenter***, 955 A.2d 411, 414 (Pa.Super. 1997). Instantly, Appellant challenges the PWID conviction. In order to prove this offense, the Commonwealth must establish beyond a reasonable doubt that the defendant possessed a controlled substance with the specific intent or goal to deliver it to another. ***Commonwealth v. Conaway***, 791 A.2d 359 (Pa.Super. 2002); 35 Pa.C.S. § 780-113(a)(30). In order to prove the requisite intent for delivery, the court may consider a variety of relevant factors which include, "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash." ***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1237-1238 (Pa. 2007).

Appellant relies upon our Supreme Court's ruling in ***Commonwealth v. Keblitis***, 456 A.2d 149 (Pa. 1983), to support his position that the

Commonwealth failed to present sufficient evidence to sustain the jury verdict. In *Keblitis*, the defendant's conviction for PWID and manufacturing marijuana was overturned after a court ruled that the fact that the police observed the defendant performing work in a large garden that contained marijuana, as well as many other types of plants, was insufficient to support his conviction. *Id*. at 151. The court held that the police had presented no evidence or testimony to show that the defendant had been performing gardening duties for marijuana plants or that he was even aware of their presence in the garden. *Id*. The court also concluded that the defendant's mere presence in the garden was not enough to support a conviction that he was aware of the marijuana in the garden or the amount also found in the house, due to the absence of proof that he actually resided there. *Id*. However, *Keblitis* is not helpful in this case because Appellant unquestionably possessed the marijuana. The relevant question herein is whether he possessed it with the required intent to distribute it in violation of § 780-113(a)(30). For the following reasons, we find that the Commonwealth adduced sufficient evidence of Appellant's intent to deliver.

Expert testimony from a witness who is qualified in the field of drug distribution may be sufficient to establish the intent to deliver. *Commonwealth v. Bull*, 618 A.2d 1019, 1021 (Pa.Super. 1993), *aff'd*, 650 A.2d 874 (Pa. 1994). Detective Chappell testified that a search of the camper yielded 3.2 pounds of marijuana. N.T., 5/30/14, at 20. Detective

Chappell also considered the manner in which the marijuana was packaged, stored, and displayed throughout the camper. Detective Chappell and the other police officers executing the search warrant found a bathroom converted into a storage area where the fresh marijuana was being dried on silver screens, a tub that contained a large amount of marijuana, two digital scales, a marijuana shredder, eleven individually wrapped bags of marijuana (each of which weighed roughly one ounce), and numerous items and personal effects demonstrating Appellant's residency in the camper. *Id*. at 26-28, 30-34, 37-38.

During cross-examination, Detective Chappell testified that he had arrested others in the past who have had larger amounts of marijuana on them. *Id*. at 45. However, he explained that the quantity Appellant possessed was consistent with drug trafficking and inconsistent personal use. *Id*. at 46. He further conceded that he has been involved in cases where both buyers and sellers have had scales on them to ensure that they are getting the requested amount of marijuana. When questioned about the totality of the circumstances and factors considered in deciding to charge Appellant with PWID, Detective Chappell responded that the presence of the fresh marijuana on the drying racks in the camper was particularly important since:

> If I was a marijuana user I would not purchase fresh marijuana. Basically, it needs to be dried. If you were to purchase fresh marijuana it will become moldy very quick and in a very short time it will be no

good…That's part of the process in manufacturing and preparing the product for delivery.

*Id*. at 64-65.

The Commonwealth later called Detective Taylor as an expert in drug trafficking and interdiction. While Appellant did not challenge detective Taylor's expertise, we observe that Detective Taylor is an eleven-year veteran of various drug task forces, including of the FBI's Capital City Safe Street Task Force, and he encountered drug trafficking operations while patrolling the Caribbean as a member of the United States Coast Guard. *Id*. at 71-72.

When questioned by Appellant's counsel, Detective Taylor stated that, although it was possible, it was not in his experience that people who buy marijuana would carry a scale with them. *Id*. at 85. Detective Taylor also testified that the sheer quantity of marijuana which was seized, coupled with the presence of the scales, and Appellant's statement that he intended to deliver the packaged marijuana to a local drug distributor whom Detective Taylor had previously investigated, evinced the requisite intent. *Id*. at 79.

The Commonwealth clearly presented sufficient, if not overwhelming, evidence to establish beyond a reasonable doubt that Appellant possessed marijuana with intent to deliver. In addition to Detective Taylor's testimony that Appellant admitted that he intended to distribute the marijuana to a local drug dealer, expert witness testimony established the presence of a

large quantity of pre-packaged one-ounce bags of marijuana, equipment used to prepare fresh marijuana for delivery, and two sets of digital scales for weighing the contraband. Appellant's claim fails.

Next, we address whether the conviction for PWID was against the weight of the evidence.[3] "A motion for a new trial alleging that the verdict is against the weight of the evidence is addressed to the discretion of the court. Appellate review, therefore, is a review of the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." *Commonwealth v. Brown*, 648 A.2d. 1177, 1189 (Pa. 1994). An appellate court will only reverse a lower court's verdict if "it is so contrary as to shock one's sense of justice." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). Appellant argues that the trial court has abused its discretion by failing to find his conviction to be against the weight of the evidence.

Appellant's main challenge to the weight of the evidence presented by the Commonwealth centers on his argument that the testimony given by the Commonwealth's witnesses, Detectives Chappell and Taylor, regarding the significance of the amount of marijuana, its packaging, and the presence of

---

[3] Although Appellant's post-sentence motion arguably challenged the weight of the evidence supporting his conviction for possession of paraphernalia, he abandoned that claim in his brief in support of the post-sentence motion and he does not resurrect the argument herein. Accordingly, we do not address it.

digital scales, was so riddled with inconsistencies as to render the jury's verdict in the Commonwealth's favor something that would "shock one's sense of justice."  We reject this claim.

"A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact-finder." **Commonwealth v. Morales**, 91 A.3d 80, 91 (Pa. 2014) (citing **Commonwealth v. Tharp**, 830 A.2d 519, 528 (Pa. 2003)).  Just because the jury may have been able to find that the detectives' statements concerning similar equipment that they have discovered on both buyers and sellers could have created a reasonable ambiguity as to whether Appellant intended to deliver the marijuana does not require that they must find that way.

Initially, we observe that Appellant fails to address, or even acknowledge, the Commonwealth's strongest evidence: Detective Taylor's testimony regarding Appellant's admission that he intended to distribute the marijuana to a known drug dealer.  Furthermore, outside of some exposition concerning statements made by the Commonwealth's witnesses at trial, regarding the possibility that a purchaser of marijuana could possess scales and similar packaging materials, Appellant fails to elaborate on any alleged "inconsistencies" in testimony.  Moreover, he neglects to explain how the purported inconsistencies overcome the weight of the remaining,

uncontested evidence presented at trial. Determinations concerning the relative credibility of witness testimony are properly for the jury to decide, absent an abuse of discretion, and unless the evidence is clearly unreliable or contradictory. ***Commonwealth v. McLean***, 578 A.2d 4, 7 (Pa.Super. 1990). Herein, the jury credited the testimony of the Commonwealth's witnesses that Appellant was engaged in a marijuana enterprise. Thus, no relief is due.

Next, we address Appellant's claim that the trial court erred in failing to determine his eligibility for the RRRI program. Appellant mistakenly raised this argument as a component of his challenge to the discretionary aspects of his sentence. Though not directly asserted, Appellant is essentially arguing that the sentencing judge's refusal to make him RRRI eligible rendered his sentence illegal. This Court has previously held that a defendant's challenge to the court's failure to impose the RRRI minimum sentence is a non-waivable illegal sentencing claim. ***Commonwealth v. Robinson***, 7 A.3d 868, 871 (Pa. Super. 2010). Accordingly, we address Appellant's contention within the legality-of-sentence paradigm. As issues relating to the legality of a sentence are questions of law, our standard of review is *de novo*. ***Commonwealth v. Melius***, 100 A.3d 682 (Pa.Super. 2014).

The RRRI program was designed to "ensure appropriate punishment for persons who commit crimes." 61 Pa.C.S. § 4502. An "eligible offender"

for this program must satisfy certain criteria in order to qualify for it. 61 Pa.C.S. § 4503. The pre-requisites to enter the RRRI program require that Appellant does not have: 1) a history of present or past violent behavior; 2) a conviction with a sentence that included an enhancement for the use of a deadly weapon; 3) a conviction or previous adjudication of delinquency for a personal injury offense, except for third degree misdemeanor simple assault, or an equivalent offense under the laws of another jurisdiction in the United States or one of its territories; 4) a conviction or adjudication of delinquency for any sexual offenses; and is not 5) awaiting trial or sentencing for additional charges which would cause him to become ineligible for RRRI in the future, or; 6) ever been sentenced according to mandatory minimums for drug trafficking under Pa.C.S. § 7508(a)(1)(iii), 2(iii), 3(iii), 4(iii), 7(iii), or 8(iii).[4] 61 Pa.C.S. § 4503 (1)-(6).

Sentencing courts are required to determine a defendant's eligibility for the RRRI program, and subject to one exception that does not apply to this case, if a defendant is RRRI eligible, the court must impose an alternative RRRI minimum sentence along with the minimum and maximum terms of imprisonment that the court imposed as a matter of its sentencing discretion under the Sentencing Code, 42 Pa.C.S. §§ 9701-9799.41.

_____

[4] Appellant has in fact been previously found guilty of violating the Controlled Substance, Drug, Device and Cosmetic Act, but he was never sentenced pursuant to any of the above referenced statutes.

Pursuant to the pertinent statute regarding the imposition of sentences of total confinement,

> The court shall determine if the defendant is eligible for a recidivism risk reduction incentive minimum sentence under 61 Pa.C.S Ch. 45 (relating to recidivism risk reduction incentive). If the defendant is eligible, the court shall impose a recidivism risk reduction incentive minimum sentence in addition to a minimum sentence and maximum sentence except, if the defendant was previously sentence to two or more recidivism risk reduction incentive minimum sentences, the court shall have the discretion to impose a sentence with no recidivism risk reduction incentive minimum.

42 Pa.C.S. § 9756(b.1).

In *Commonwealth v. Tobin*, 89 A.3d 663, 670 (Pa.Super. 2014), this Court found that a failure to impose an RRRI minimum sentence on an eligible offender was a legal error. This has been previously recognized by our own Supreme Court. "If the sentencing court concludes that a defendant is eligible for an RRRI Act minimum sentence, or the prosecutor has waived the eligibility requirements, then the court **must** impose the minimum and maximum sentence as well as RRRI Act minimum sentence." *Commonwealth v. Hansley*, 47 A.3d 1180, 1187 (Pa. 2012) (emphasis added).

Appellant argues that, since he is not disqualified from enrollment in this program due to any of the foregoing provisions outlined in § 4503 (1)-(6), the trial court was in error. Instantly, the issue of Appellant's eligibility, or lack thereof, was not addressed by either party or the trial court at

sentencing. Appellant raised this issue for the first time in his post-sentence motion. The trial court denied this aspect of the post-sentence motion on the ground that Appellant's conviction on July 24, 2002 for misdemeanor simple assault in Texas disqualified him from eligibility. Trial Court Opinion, 12/05/14, at 10.

The determination whether the trial court erred in failing to find Appellant RRRI eligible necessarily turns upon whether the Texas conviction for misdemeanor simple assault is the equivalent of Pennsylvania's simple assault under 18 Pa.C.S. § 2701 (a) "**when the offense is a misdemeanor of the third degree**." 61 Pa.C.S. § 4503 (emphasis added). In Pennsylvania, a third-degree misdemeanor is the lowest grade of non-summary criminal offense. Pennsylvania grades simple assault as a misdemeanor of the second degree unless it is committed in a fight or scuffle by mutual consent. 18 Pa.C.S. § 2701(b). Under the narrow circumstances of a fight by mutual consent, the offense is graded as a third-degree misdemeanor, and therefore, it will not disqualify a person from RRRI eligibility. § 2701(b)(1) ("a fight or scuffle entered into by mutual consent . . . is a misdemeanor of the third degree").

Texas law is incongruent. Pursuant to the Texas Penal Code, Class C misdemeanors are the lowest grade of non-summary criminal offenses, and all offenses that are designated misdemeanors without specification as to punishment are considered to be Class C misdemeanors. *See* Tex., Penal

- 15 -

Code Ann., § 12.03(b) (Vernon 2007). In that jurisdiction, a person commits a simple assault graded as a Class C misdemeanor if he or she: "intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id*. at § 22.01(a)(2-3) and (c).[5]

The two misdemeanor simple assault offenses are not equivalent. In fact, the elements of the Class C misdemeanor for simple assault in Texas align more closely with a simple assault graded as a second-degree misdemeanor in Pennsylvania. Moreover, a fight by mutual consent, the

_____

[5] The relevant section of the Texas Penal Code provides,

**§ 22.01. Assault**

    (a) A person commits an offense if the person:

        (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

        (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse;

        . . . .

    (c) An offense under Subsection (a)(2) or (3) is a Class C misdemeanor[.]

Tex., Penal Code Ann. § 22.01(a) and (c).

only non-disqualifying form of simple assault for RRRI purposes, is not even criminal in Texas provided that the defendant does not threaten or inflict serious bodily injury. Indeed, Texas views a fight by mutual consent as a qualified defense to simple assault. *See id*. at § 22.06 ("The victim's effective consent or the actor's reasonable belief that the victim consented to the actor's conduct is a defense to prosecution under Section 22.01 (Assault). . . . if . . . (1) the conduct did not threaten or inflict serious bodily injury[.]").

Thus, Appellant's ungraded misdemeanor assault conviction in Texas was not based on his participation in a fight or scuffle entered into by consent as that conduct would have either been a defense to simple assault under § 22.06 or, if he inflicted serious bodily injury, an aggravated assault under § 22.02. As the two offenses cannot be viewed as equivalent, the trial court did not err in holding that Appellant's prior conviction for misdemeanor simple assault in Texas rendered him RRRI ineligible.

Appellant's final issue is that the trial court abused its discretion by imposing a harsh and unreasonable sentence on him through a failure to balance his rehabilitative needs, and other mitigating circumstances, with the public's safety. "The standard of appellate review of discretionary aspects of sentencing is an abuse of discretion." *Commonwealth v. Archer*, 722 A.2d 203, 211 (Pa.Super. 1998). Instantly, Appellant argues that the sentence was not appropriate because the trial court failed to

impose an individualized sentence that considered the impact of the offense on the public, his remorse, and his rehabilitative needs pursuant to § 9721(b).

Four prerequisites must be met before this Court will address the merits of an appeal concerning the discretionary aspect of sentencing. ***Commonwealth v. Lebarre***, 961 A.2d 176, 178 (Pa.Super. 2008). Pursuant to these requirements, an appellant must: (1) file a timely notice of appeal; (2) raise the issue at sentencing or in a post sentence motion and preserve it in a court-ordered Rule 1925(b) statement; (3) include a statement of the reasons relied upon for the appeal in compliance with Pa.R.A.P 2119(f),[6] and; (4) present a substantial question that the sentence appealed from is not appropriate under the sentencing code. ***Id.***

Instantly, Appellant's notice of appeal was timely filed, the issue was raised in his post-sentence motion and preserved in his Rule 1925(b) statement. Appellant's brief included a Pa.R.A.P 1925(b) statement setting forth this issue and the reasons relied upon for his appeal. Finally, we observe that Appellant's contention presents a substantial question that the sentence was inappropriate under the sentencing guidelines. ***See***

---

[6] Pursuant to Pa.R.A.P 2119(f), "An Appellant who challenges the discretionary aspects of a sentence of a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of the sentence."

*Commonwealth v. Ahmad*, 961 A.2d 884, 887 (Pa.Super. 2008) (claim that sentencing court abused its discretion by failing to impose individualized sentence due to failure to consider totality of circumstances raised substantial question that required review). Thus, we address the merits of Appellant's discretionary sentencing claim.

Appellant argues that the trial court abused its discretion and imposed an unreasonable sentence on him when he was given fifteen to thirty months for PWID and six to twelve months for possession of drug paraphernalia. As it stands, both of these sentences fall within the standard range of the sentencing guidelines in light of Appellant's prior record score and the applicable offense gravity scores. The crux of Appellant's contention is that the trial court failed in its requirement to impose an individualized sentence under 42 Pa.C.S. § 9721(b) by properly weighing the protection of the public, the impact of the offense on the community, and rehabilitative needs of the Appellant.

The following principles are relevant to our review. We must vacate a sentence and remand to the sentencing court with instructions if we find that:

> 1. The sentencing court purported to sentence in the guidelines but applied the guidelines erroneously.
>
> 2. The sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would clearly be unreasonable.

3. The sentencing court sentenced outside the guidelines and the sentence is unreasonable.

42 Pa.C.S. § 9781(c).

Sentences that fall within the standard range of the sentencing guidelines are proper unless there are circumstances which render the application of these guidelines clearly unreasonable. ***Commonwealth v. Feucht***, 955 A.2d 377, 384 (Pa.Super. 2008). Appellant's argument implicates the second aspect of the above-referenced provision. He relies on several factors to establish that the totality of his personal life circumstances make the length of his sentence too harsh, which he argues the trial court failed to consider during sentencing.

Appellant asserts that the court neglected to consider that he was an excellent student and only ten credits short of earning his Bachelors' degree from Penn State University when he was sentenced. Appellant also notes that his father has been sick and that the trial court erred by failing to consider what effect the length of sentencing would have in requiring that his incarceration take place at a state institution that was much further away from him than the county jail. In addition, Appellant argues that the trial court erred by failing to take into account that the crimes of which he was convicted had a minimal impact on the public and that he expressed remorse for his actions during sentencing. Specifically, he asserts that, although his prior record score is high, the impact of these particular crimes on the public

was minimal because there was no evidence that he had ever tried to sell marijuana to anyone in the public. Appellant asserts that the trial court's failure to properly consider these factors resulted in a failure to give him a proper individualized sentence in accordance with § 9721(b).

The Commonwealth's counterarguments center on the assertion that the sentences imposed were appropriately within the standard range of the sentencing guidelines. It asserts that Appellant's high prior record score of five, which included a prior conviction for PWID (marijuana), clearly indicates that he is a recidivist. The Commonwealth highlighted that after Appellant's arrest during 2009 for the same offense, he had been sentenced to six to twenty-three months in the Franklin County prison, and yet still committed the identical crime shortly after he was released.

The record belies Appellant's contention that the trial court did not impose an individualized sentence. At the outset we observe that the trial court reviewed a pre-sentence report. Hence it is presumed that the trial court was aware of the relevant information regarding his character and weighed its consideration appropriately. *See Commonwealth v. Naranjo*, 53 A.3d 66 (Pa.Super. 2012) (sentencing court's decision to emphasize certain factors over Appellant's remorse and potential for rehabilitation did not render sentence unreasonable). Moreover, as it relates to Appellant's contention that he was not going to place the drugs into public commerce, there is no other way to characterize Appellant's argument here than as

completely disingenuous in light of the facts of the trial court record. As noted *supra*, Detective Taylor testified unequivocally that Appellant admitted to him that he intended to sell the bags of marijuana to a known drug trafficker. N.T., 5/30/14, at 79.

Accordingly, for the forgoing reasons, we find the trial court did not abuse its discretion in sentencing Appellant to fifteen to thirty months imprisonment. Appellant acknowledges that both of his sentences are within the standard range of the sentencing guidelines given his prior record and the offense gravity scores. Moreover, in light of the fact that the certified record verifies the trial court's consideration of the relevant sentencing factors, the court's decision to emphasize certain factors over others was within its purview of discretion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2015