J-S31039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KOREY TIEN MARSHALL | : | |
| | : | |
| Appellant | : | No. 28 WDA 2019 |

Appeal from the Judgment of Sentence Entered August 27, 2018
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0002084-2017

BEFORE: OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED AUGUST 27, 2019**

Korey Tien Marshall appeals the judgment of sentence entered following his convictions for possession with intent to deliver a controlled substance (PWID), possession of a controlled substance, and criminal use of a communication facility.[1] He challenges the sufficiency of the evidence. We affirm.

The Commonwealth presented the following evidence at trial. Detective Arnold Bernard, Sr. testified that on November 7, 2017, a "controlled buy" was set up to purchase crack cocaine from Marshall. N.T., Trial, 5/30/18, at 8. Detective Bernard explained what a controlled buy is as follows:

> It's a drug deal where we try to control as many of the aspects of the transaction as we can, which basically usually starts, if we

_____

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), and 18 Pa.C.S.A. § 7512(a), respectively.

have a confidential informant, the informant is debriefed as to how the transaction usually goes.

Official funds are used to make purchases. We'll use video recording devices as permitted by law, and it can also be audio depending if the person is consensualized. There will be undercover officers involved with the transaction, if we can, and actually there's also surveillance during the deal.

After the deal, the evidence is – or, I'm sorry, the illegal drugs purchased are taken into evidence, are submitted to usually the state police laboratory for analysis, and we'll get a lab report back from that.

*Id.*

He testified that here, police used a confidential informant ("CI") to contact Marshall and set up the controlled buy. However, an undercover officer, Officer Gale Berkin, actually met with Marshall to conduct the buy. *Id.* at 8-9. Detective Bernard testified that in this case, they recorded the transaction using a hidden video camera. On cross-examination, Detective Bernard conceded he could "only see hand movement, exchange" on the video, and could not see the drugs themselves:

[Defense Counsel]: The video that we just observed, would you agree that there's no controlled substance that is shown in the video?

[Detective Bernard]: I could not see – I could only see hand movement, exchange. I could not say, you know – no. I mean, I could not see these pink bags if that's what you're asking, no.

[Defense Counsel]: So you didn't see any money – the video showed no money changing hands and no controlled substance changing hands?

[Detective Bernard]: I could not make them out, no.

*Id.* at 26.

The officer who conducted the buy, Officer Berkin, testified that on the day in question the CI put her in contact with Marshall. *Id.* at 31. She then spoke to Marshall directly over the phone and informed him that she wanted to purchase $100 worth of crack cocaine. *Id.* at 31-32. She testified that Marshall "told me to meet him at the Rite Aid in Moxham, and from there he called me and told me to walk down the alley behind Sheetz." *Id.* at 32. Before meeting with Marshall, Officer Berkin was outfitted with a video device and $100 in official funds to complete the controlled buy. *Id.*

Officer Berkin drove an undercover vehicle to meet with Marshall. *Id.* at 33. Officer Berkin testified that the undercover vehicle is regularly searched to determine if there are any drugs or money inside. However, she was not aware if the vehicle was searched on the date in question, or if there were any drugs or money inside it at the time. *Id.* When Officer Berkin arrived at the Rite Aid she received a phone call from Marshall. *Id.* at 34. Marshall directed her to his vehicle and she entered his vehicle on the front passenger side. *Id.* Officer Berkin testified that once inside the vehicle, she gave Marshall the money in exchange for two red baggies of crack cocaine. *Id.* at 34-35. Officer Berkin turned the crack cocaine over to another officer, Detective Kearn,[2] and they subsequently sent it to the Pennsylvania State Police Laboratory for analysis. *Id.* at 19. Marshall stipulated at trial that the analysis "establishes

---

[2] Detective Kearn's first name is not mentioned in the notes of testimony.

that the substances recovered relating to these cases contained cocaine." *Id.* at 45.

Officer Berkin contacted Marshall a second time a week later to institute another controlled buy but no buy occurred. *Id.* at 38. Marshall told Officer Berkin to meet him at the Rite Aid. *Id.* Marshall arrived at the Rite-Aid and the drug task force team arrested Marshall and seized the cell phone that he had used to arrange the drug sales. *Id.* at 22-23. Officers searched the vehicle but found no drugs or money. *Id.* at 24, 29.

Marshall was convicted of the aforementioned crimes. The court imposed a sentence of 18 to 36 months' incarceration. Marshall filed a motion to reinstate post-sentence and appellate rights, which the court granted. On November 30, 2018, Marshall filed a post-sentence motion challenging his sentence or alternatively, asking for his convictions to be vacated. The court denied the motion and this timely appeal followed.

Marshall raises one issue for our review:

> Did the Commonwealth provide sufficient evidence of [Marshall's] guilt beyond a reasonable doubt on each element of the alleged crimes to sustain conviction(s) at trial?

Marshall's Br. at 2.

The trial court and the Commonwealth both claim that Marshall has waived his sufficiency challenge. The Commonwealth argues that Marshall waived the issue because his Pa.R.A.P. 1925(b) statement is vague and generic. Commonwealth's Br. at 4-5. The Commonwealth notes that this Court

has held an issue is waived where the appellant's 1925(b) statement merely states, "[t]he evidence was legally insufficient to support the convictions." *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa.Super. 2013). Similarly, the trial court found waiver because Marshall's 1925(b) statement "does not reference the elements of the crimes that he alleges the Commonwealth failed to prove, nor does he identify any type of allegedly deficient evidence." Trial Court Opinion, filed 2/1/19, at 3.

The Pennsylvania Rules of Appellate Procedure require a 1925(b) statement to "identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal." *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa.Super. 2008) (quoting *Commonwealth v. Flores*, 921 A.2d 517, 522 (Pa.Super. 2007)). Our Supreme Court's decision in *Commonwealth v. Laboy*, 936 A.2d 1058 (Pa. 2007), is instructive. *Laboy* involved a challenge to the sufficiency of the evidence for a PWID conviction. *Id.* Laboy's 1925(b) statement read:

> I. Evidence of drug trafficking and conspiracy was insufficient.
>
> II. Evidence of conspiracy was insufficient.

- 5 -

*Id.* at 1058. The trial court concluded that the statement was insufficient. However, in its opinion, the trial court "set out the evidence adduced against [Laboy] in detail, accompanied by citations to the transcript, and concluded that there was ample evidence" to support his convictions. *Id.* On appeal, our Supreme Court agreed that Laboy's statement was insufficient but declined to find waiver because the case was "relatively straightforward." *Id.* at 1060.

Here, Marshall's 1925(b) statement asserts, "There was insufficient evidence offered at trial to support [Marshall's] convictions." Pa.R.A.P. 1925(b) Statement. Unlike *Laboy*, the trial court in the instant case did not conduct an analysis of Marshall's sufficiency claims. It found the statement insufficient and provided no further analysis. Therefore, we conclude that Marshall has waived his sufficiency claim. However, for the following reasons, even if Marshall did not waive the issue, his arguments fail.

Our standard of review for a sufficiency of evidence claim is *de novo*, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." *See Commonwealth v. Rushing*, 99 A.3d 416, 420-21 (Pa. 2014). The finder of fact is free to believe all, part, or none of the evidence presented in judging the credibility of the witnesses, and is similarly free to determine the weight to afford the evidence. *Commonwealth v. Henkel*, 938 A.2d 433, 438 (Pa.Super. 2007). We may not re-weigh the evidence and substitute our judgment for that of the fact finder. *Commonwealth v. Smith*, 146 A.3d 257, 261 (Pa.Super.

2016). Additionally, the Commonwealth's evidence "need not preclude every possibility of innocence" in order to constitute proof beyond a reasonable doubt. *Commonwealth v. Lewis*, 911 A.2d 558, 563 (Pa.Super. 2006) (quoting *Commonwealth v. Kim*, 888 A.2d 847, 851 (Pa.Super. 2005)). Indeed, it may sustain its burden by means of wholly circumstantial evidence. *See Commonwealth v. Crabill*, 926 A.2d 488, 490 (Pa.Super. 2007) (citing *Commonwealth v. Markman*, 916 A.2d 586, 598 (Pa. 2007)).

### A. Possession of a Controlled Substance & PWID

In order to sustain a conviction for PWID, the Commonwealth must prove "both the possession of the controlled substance and the intent to deliver the controlled substance." *Commonwealth v. Estepp*, 17 A.3d 939, 944 (Pa.Super. 2011) (quoting *Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa.Super. 2008)). "It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver." *Lee*, 956 A.2d at 1028 (quoting *Commonwealth v. Brown*, 904 A.2d 925, 931 (Pa.Super. 2006)). "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." *Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa.Super. 2003) (quoting *Commonwealth v. Conaway*, 791 A.2d 359, 363 (Pa.Super. 2002)).

The Commonwealth may prove possession by showing actual, constructive, or joint constructive possession. *Commonwealth v. Vargas*,

108 A.3d 858, 868 (Pa.Super. 2014) (*en banc*). To prove actual possession, the Commonwealth must show that the contraband was found on the defendant's person. *Id.* It may carry its burden of proving constructive possession by showing that the defendant had "the power to control the contraband and the intent to exercise that control." *Id.*; *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super. 2012) (quoting *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa.Super. 2004)).

Here, Marshall argues that the evidence was insufficient to sustain a conviction for PWID because the video of the controlled buy did not show an exchange of money or drugs, there was no recorded conversation about the controlled buy in the video, and police recovered no contraband or money after his arrest. Marshall's Br. at 5. He also maintains that Officer Berkin was not searched prior to her engaging in the drug sale with Marshall and also points to the inconsistent testimony of Detective Bernard and Officer Berkin regarding the color of the packaging of the drugs. *Id.* at 6.

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence to sustain the PWID conviction. Officer Berkin testified that Marshall handed her crack cocaine in exchange for money. This was enough to prove at least constructive possession, if not actual possession. Further, the Commonwealth proved Marshall's intent to distribute through Officer Berkin's testimony that Marshall contacted her by phone and directed her to where they could meet to complete

the transaction. **See Kirkland**, 831 A.2d at 611 (holding that the behavior of the defendant is a factor in determining intent).

Marshall also claims that the evidence was insufficient to sustain the possession conviction. Marshall fails to develop this argument in his brief and therefore waived it. **See Commonwealth v. Russell**, 209 A.3d 419, 429 (Pa.Super. 2019) ("An issue will be deemed to be waived where an appellant fails to properly explain or develop it in his brief"). In any event, the testimony that Marshall gave Officer Berkin crack cocaine in exchange for money supported the possession conviction.

### B. Criminal Use of Communication Facility

To sustain a conviction for criminal use of communication facility, the Commonwealth "must prove that a defendant intentionally, knowingly, or recklessly used a communication facility, and that, in so doing, the defendant intentionally, knowingly, or recklessly facilitated the commission or attempted commission of the underlying felony." **Commonwealth v. Moss**, 852 A.2d 374, 381 (Pa.Super. 2004). A "communication facility" is defined as "a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, **telephone**, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail." 18 Pa.C.S.A. § 7512(c) (emphasis added). "Facilitation" is "any use of a communication facility that makes easier the commission of the underlying felony." **Moss**, 852 A.2d at 382.

Again, Marshall fails to develop or explain why the evidence was insufficient, and he therefore has waived this claim as well. **See Russell**, 209 A.3d at 429. However, even if he had preserved this claim, we would reject it for lack of merit.

Here, the underlying felony was PWID. The Commonwealth presented evidence that Marshall used a communication facility, *i.e.*, his cell phone, to set up the drug sale with Officer Berkin. Using a cell phone in furtherance of committing a felony is sufficient to sustain a conviction for criminal use of a communication facility. **See Moss**, 852 A.2d at 382 (concluding sufficient evidence for criminal use of communication facility where defendant use a telephone to "discuss illicit drug transactions"). Viewed in the light most favorable the Commonwealth, this evidence was sufficient to sustain the conviction.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/27/2019</u>

- 10 -