J-S75034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DAQUAN PRUITT, | : | |
| | : | |
| Appellant | : | No. 3436 EDA 2015 |

Appeal from the Judgment of Sentence October 30, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0002103-2014

BEFORE: BOWES, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:           **FILED DECEMBER 29, 2016**

Daquan Pruitt ("Pruitt") appeals from the judgment of sentence entered following his convictions of criminal conspiracy, possession of a controlled substance, and possession with the intent to deliver a controlled substance.[1] We affirm.

The trial court summarized the relevant history underlying the instant appeal, which we adopt for the purpose of this appeal. *See* Trial Court Opinion, 2/4/16, at 1-4.

Pruitt presents the following claims for our review:

> 1. Whether [Pruitt] is entitled to an arrest of judgment because there was insufficient evidence to support [his] conviction beyond a reasonable doubt for possession of cocaine with intent to deliver, conspiracy, and knowing and intentional possession of a controlled substance[?] Specifically, [whether] the Commonwealth failed to prove [Pruitt's] actual or constructive possession of the drugs found in the black bag in the alleyway?

---

[1] *See* 18 Pa.C.S.A. § 903; 35 P.S. § 780-113(a)(16), (30).

2. Whether [Pruitt] is entitled to a new trial as the verdict was not supported by the greater weight of the evidence?

Brief for Appellant at 4.

Pruitt first challenges the sufficiency of the evidence underlying his convictions. *Id.* at 9. Pruitt argues that there was no admissible evidence that he possessed or sold narcotics. *Id.* at 10. According to Pruitt, "there was only speculative evidence tying [Pruitt] to the drugs that were recovered from the alleyway in a black bag." *Id.* Regarding his conviction of criminal conspiracy, Pruitt argues that the evidence is insufficient "to show that either [Pruitt] or any of the co-conspirators agreed with one another to deliver or aid in delivering narcotics[,]" or that he had the requisite criminal intent. *Id.* at 10-11. Pruitt contends that when he was arrested, he was not in possession of any contraband, and he was never seen possessing contraband. *Id.* at 12. Further, Pruitt points out that the female arrested with him did not possess contraband. *Id.* at 12-13. As to his convictions of possession and possession with intent to deliver narcotics, Pruitt claims that the Commonwealth presented no evidence that he was selling cocaine, or that he shared the requisite criminal intent to deliver cocaine. *Id.* at 13.

In its Opinion, the trial court set forth the relevant law, addressed Pruitt's claim, and concluded that it lacks merit. *See* Trial Court Opinion, 2/4/16, at 5-12. Upon review of the arguments presented by Pruitt, and the record certified to this Court on appeal, we agree with the sound reasoning of the trial court, as set forth in its Opinion. *See id.* We therefore affirm on

- 2 -

the basis of the trial court's Opinion, with regard to Pruitt's first issue. *See id.*

Pruitt next challenges his convictions as against the weight of the evidence. Brief for Appellant at 13. Pruitt argues that "there was no evidence presented of actual or constructive possession, as well as a conspiratorial agreement to support the verdict of the trial court[.]" *Id.* at 14. Therefore, Pruitt argues, "the verdict is clearly contrary to the evidence and is shocking to one's sense of justice, making the award of a new trial imperative." *Id.*

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Cousar*, 928 A.2d 1025, 1035-36 (Pa. 2007).

> Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." *Commonwealth v. Rivera*, 603 Pa. 340, 983 A.2d 1211, 1225 (Pa. 2009). An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (Pa. 2003). Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Diggs*, 597 Pa. 28, 949 A.2d 873, 879 (Pa. 2008).

*Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016).

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. *See* Trial Court Opinion, 2/4/16, at 13-14. We discern no

- 3 -

abuse of discretion in the trial court's reasoning or conclusion. We therefore affirm on the basis of the trial court's Opinion as to Pruitt's challenge to the weight of the evidence. *See id.*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2016

Circulated 11/30/2016 04:06 PM

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CRIMINAL SECTION**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0002103-2014 |
| | : | |
| v. | : | |
| | : | 3436 EDA 2015 |
| DAQUAN PRUITT | : | |

**FILED**

FEB 0 4 2016

Criminal Appeals Unit
First Judicial District of PA

**OPINION**

LANE, J.                                                        February 04, 2016

### OVERVIEW AND PROCEDURAL HISTORY

On June 6, 2013, Daquan Pruitt (herein "Defendant") was arrested and later charged with Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver ("PWID"), 35 P.S. § 780-113 (a)(30), Intentional Possession of Controlled Substance by Person Not Regulated, 35 P.S. § 780-113 (a)(16), and Conspiracy- PWID, 18 Pa.C.S.A. § 903. On July 27, 2015, a waiver trial was held before this court and the Defendant was found guilty on all charges. Sentence was deferred for a Pre-Sentence Investigation Report. On October 30, 2015, Defendant was sentenced to an aggregate term of 1-2 years of incarceration, followed by 6 years of probation. He was found guilty without further penalty for Intentional Possession of Controlled Substance by Person Not Regulated. Defense counsel filed a Motion for Reconsideration of Sentence on November 5, 2015, which was denied on November 6, 2015.

A timely notice of appeal was filed on November 12, 2015. A Motion for Extension of Time for the 1925(b) Statement of Matters Complained on Appeals was granted on December 14, 2015 due to the lack of transcription of the notes of testimony. A Statement of Matters

1

Complained on Appeal was filed on January 22, 2016. The following issues are complained on appeal:

1. The appellant is entitled to an arrest of judgment because there was insufficient evidence to support appellant's conviction beyond a reasonable doubt for possession of cocaine with intent to deliver, conspiracy, and knowing and intentional possession of a controlled substance. Specifically, the Commonwealth failed to prove appellant's actual or constructive possession of the drugs found in the black bag in the alleyway.
2. Appellant is entitled to a new trial as the verdict was not supported by the greater weight of the evidence.

## FACTS

On June 5, 2013, at approximately 9:20 p.m., Officer McCauley and his partner, Officer Aponte, set up plain clothes surveillance in the area of 500 West Cornwall Street. (N.T. 04/24/15 p. 5-6). The area was well-lit with street lights and there was nothing obstructing their view. (*Id.* at 6, 16). They observed the Defendant and a female, later identified as Tenesha Govan, standing next to each other on the northwest corner of 5th and Cornwall Street. (*Id.* at 7-9). A gray Honda Civic pulled up and parked on the north corner of the west side of the street, and a male referred to as Mr. Santana exited the vehicle to converse with them. (*Id.* at 9-10, 27). Ms. Govan then crossed to the east side of the street and looked north and south before Mr. Santana and the Defendant walked to the east side of the block. (*Id.* at 10). After the Defendant and Mr. Santana exchanged United States Currency ("USC"), Mr. Santana walked back to his vehicle, placed the money inside, and handed the Defendant a black cloth bag. (*Id.* at 11, 27). The Defendant then ran into the alleyway. (*Id.*). Although Officer McCauley could not see where the Defendant went, he observed the Defendant walking in the alleyway with the black bag. (*Id.* at 22).

The Defendant, Mr. Santana, and Ms. Govan reconvened on 5th and Cornwall Street with Mr. Santana stating "esta bien", which means "good" in Spanish. (*Id.* at 12, 30). Mr. Santana proceeded down 5th and Westmoreland Street, while Ms. Govan crossed over to the east side of

the street. (*Id.* at 13). Three people engaged in a conversation with the Defendant and eventually handed him money. (*Id.*). Ms. Govan looked north and south before waiving at Defendant, who then went inside the alleyway for approximately 30 seconds before handing objects to each of those three people with a closed fist. (*Id.* at 13-14). However, the three alleged buyers were not caught due to a miscommunication between Officer McCauley and the officers from his squad. (*Id.* at 14).

After these three transactions, three more alleged buyers engaged the Defendant and held a brief conversation with him. (*Id.* at 14). Again, Ms. Govan went to the east side of the street, looked north and south, and waived at the Defendant. (*Id*). The Defendant went into the alleyway for approximately 30 seconds, exited, and handed items to each alleged buyers in exchange for money. (*Id.* at 14-15, 17). Mr. Santana stood by 5th and Westmoreland Street. (*Id.*). Shortly after the transactions, Mr. Santana ran up the block, yelling. (*Id.*). Officer McCauley suspected that it was a compromised surveillance and radioed for uniform officers. (*Id.*). He observed Officer Santiago stop Mr. Santana and recovered $90 USC from his vehicle, which was placed on property receipt. (*Id.* at 15-16, 90). Officer Smalls stopped the Defendant and recovered $315 USC on his person. (*Id.* at 25). Officer Fagan recovered a black bag with bundles of crack and cocaine in the alleyway. (*Id.* at 16). Counsels stipulated that $57 USC was recovered on Ms. Govan when she was arrested. (*Id.* at 25, 57).

Officer Aponte, Officer Fagan, and Officer Smalls testified next. Officer Aponte testified that on that night in question, he observed Ms. Govan cross to the east side of the street while Mr. Santana went towards Westmoreland Street. (*Id.* at 29-30). Ms. Govan was "looking out" by looking up and down the street. (*Id.* at 30). Officer Fagan testified that on June 5, 2013, at approximately 9:30 p.m., he was directed by Officer McCauley to go into an alleyway. (*Id.* at

3

31). He recovered a black bag containing 84 clear packets with a white-powdery substance of alleged cocaine and 196 orange packets that contained an off-white chunky substance of alleged cocaine base, all of which was placed on property receipt[1]. (*Id.* at 32). The black bag was hidden in a hole of a brick wall. (*Id.* at 34). Officer Fagan testified that even though there is a back door to the bar near the alleyway, the bar area is fenced in and one would need to jump the fence to get into the alleyway. (*Id.* at 36-37). Officer Smalls testified that he arrested the Defendant a little after 9:30 p.m. on that night in question and recovered $315 USC on his person, which was placed on property receipt. (*Id.* at 38-39).

The defense called Shakeyla Smith and the Defendant to testify. Ms. Smith, the Defendant's ex-girlfriend, testified that on June 5, 2013, she had an argument with the Defendant and she dropped him off on 5th and Cornwall Street. (N.T. 07/27/15 at 6). Less than three minutes later, the Defendant called her and told her he was arrested. (*Id.* at 9). She then spoke with Officer Smalls on the phone who told her that the Defendant was "at the wrong place at the wrong time". (*Id.*). The Defendant testified that after Ms. Smith dropped him off that night, he had plans to meet Ms. Govan, whom he was also involved with. (*Id.* at 18). The Defendant denied going into the alleyway and denied serving anyone narcotics. (*Id.* at 20-21). He testified that as he tried to give Ms. Govan a hug on the street, approximately six cops exited the police vehicles, searched, and arrested them and Mr. Santana. (*Id.* at 23-25).

---

[1] There was a total weight of 30.19 grams of cocaine from the 84 clear packets and 54 milligrams of cocaine base from the 196 orange packets. (N.T. 4/24/15 at 43).

## DISCUSSION

**a) There was sufficient evidence to support Defendant's conviction of Possession with Intent to Deliver, Conspiracy, and Intentional Possession of a Controlled Substance beyond a reasonable doubt.**

A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. Commonwealth v. Snyder, 870 A.2d 336 (Pa.Super. 2005) (citing Commonwealth v. Krouse, 799 A.2d 835, 837 (Pa.Super.2002)). The Courts use the following standard to determine the sufficiency of evidence admitted at trial:

> The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the [fact-finder] could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.

Commonwealth v. Cassidy, 668 A.2d 1143, 1144 (Pa.Super. 1995) (citing Commonwealth v. Hardcastle, 546 A.2d 1101, 1105 (1988) (citations omitted)). The trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Commonwealth v. Passmore, 857 A.2d 697, 706 (Pa.Super. 2004). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id.*

### i. Criminal Conspiracy

"To sustain a criminal conspiracy conviction, the Commonwealth must establish that the defendant entered into an agreement to commit or aid in an unlawful act with another person or persons, with a shared criminal intent, and an overt act was done in the conspiracy's furtherance." Commonwealth v. Murphy, 795 A.2d 1025 (Pa.Super. 2002) aff'd, 844 A.2d 1228 (2004) (citing Commonwealth v. Hennigan, 753 A.2d 245, 253 (Pa.Super.2000)). The overt act need not

accomplish the crime, but need only be in furtherance thereof, and in fact, no crime at all need be accomplished for the conspiracy to be committed. *Id.* The agreement is generally established via circumstantial evidence, such as by the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators. *Id.*

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

*Id.* at 1038 (citation omitted).

In Commonwealth v. McCall, 911 A.2d 992, 994 (Pa.Super. 2006), at approximately 11:30 a.m., Officer Harris set up surveillance in Philadelphia where he observed the defendant and co-defendant stand on the west side of the street. *Id.* At approximately 11:35 a.m., Officer Harris witnessed an unidentified male approach the defendant and co-defendant, engage them in a conversation, and then hand co-defendant an unknown amount of USC. *Id.* The co-defendant then walked to a nearby drainpipe, retrieved a clear plastic bag, removed an item from the baggie, placed the baggie back inside the pipe, walked back to the unidentified male, and handed him the item. *Id.* At approximately 11:47 a.m., Officer Harris observed another male, who was later identified, approach the defendant and codefendant. *Id.* The co-defendant again walked to the drainpipe, retrieved the same plastic baggie, removed items from it, placed the baggie back inside the drainpipe, and handed the items to the male. McCall, 911 A.2d at 994. Officer observed the co-defendant handing money over to the defendant. *Id.* At approximately 12:00

a.m., Officer Harris observed another male, who was later identified, approach the defendant and co-defendant and hand co-defendant an unknown amount of USC. *Id.* The co-defendant repeated the same process, retrieving items from the bag in the drainpipe and handing items to the male. *Id.* Finally, at approximately 12:04 p.m., Officer Harris observed a male, who was also later identified, approach the defendant and co-defendant and gives co-defendant an unknown amount of USC. *Id.* Again, the co-defendant repeated the same process as described above. *Id.* The McCall Court held that under the totality of the evidence, there was sufficient evidence to sustain the defendant's convictions for possession with intent to deliver and conspiracy. *Id.* The Court reasoned that although the defendant did not take an active role in the illicit activity, he was observed working as a lookout and received money from his cohort seller. *Id.* Since the defendant is criminally liable for the actions of his co-conspirators, the court held that there is sufficient evidence to convict him of possession with intent to deliver as well. *Id.*

In Commonwealth v. Perez, 931 A.2d 703, 706 (Pa.Super. 2007), Officer Larry Tilghman was on duty conducting an undercover surveillance of the appellant, who was standing directly in front of Mr. Maddox's home at 2825 North Swanson Street. *Id.* On May 14, 2002, at approximately 10:05 a.m., Officer Tilghman observed an individual, Mr. Kissings, approach the appellant. *Id.* The appellant reached into his pocket and pulled out some blue items, which he exchanged with Kissings for money. *Id.* Officer Tilghman radioed Kissings' description to other officers in the area who stopped and searched him. *Id.* Kissings had three blue packets of heroin stamped with the words "Good Fellows" in his possession. *Id.* Fifteen minutes later, Officer Tilghman observed another individual, Mr. Cruz, approach the appellant outside of the same property. *Id.* Again, the appellant exchanged with Cruz some blue items for money. *Id.* Officer Tilghman again notified officers of Cruz's description so they could stop and search him. *Id.*

Cruz had two blue packets of heroin in his possession stamped with the words "Good Fellows." *Id.* Maddox later exited his home and gave the appellant another handful of blue packets. *Id.* The appellant placed these packets in his pocket and gave money to Maddox. *Id.* Ten minutes later, another individual, Mr. Danonhower, approached the appellant and handed the appellant money in exchange for blue items. *Id.* Officers stopped Danonhower in a manner similar to Kissings and Cruz, and found two blue packets of heroin stamped with the words "Good Fellows." *Id.* When the appellant saw a marked police vehicle drive by, he walked over to the car where Maddox was sitting and gave Maddox a handful of blue packets and money. *Id.* Appellant and Maddox had a brief conversation and walked to the east side of the street, where they were subsequently arrested by police officers. *Id.*

The Perez Court held that the Commonwealth met its burden in proving conspiracy between the appellant and his companion to sell heroin, and as such, it did not have to prove the defendant's constructive possession of the drugs found in his companion's home. *Id.* at 710. The Court reasoned that the officers observed the defendant exchange heroin with blue glassine inserts to individuals on street for money directly in front of Maddox's home. *Id.* Maddox exited his home and the defendant gave proceeds of those transactions to Maddox in exchange for more identically packaged heroin. *Id.* Further, upon seeing marked police vehicle, the defendant walked over to car where Maddox was sitting and placed heroin packets and money in the car. *Id.* The Court held that the evidence established that the appellant and Maddox conspired to sell heroin. *Id.*

In the case at bar, there is sufficient evidence to convict the Defendant of conspiracy beyond a reasonable doubt. The Defendant here took an active role in the illicit enterprise. Officer McCauley testified that he observed the Defendant and Ms. Govan standing at the corner

of 5th and Cornwall Street, while Mr. Santana pulled up his car and later joined them on the corner. (N.T. 04/24/15 at 8-10). Mr. Santana exchanged items with the Defendant for money. (*Id.* at 10-11). Ms. Govan would look north and south on 5th Street during each transaction and then waive at the Defendant's direction once the coast is clear. (*Id.* at 10-14). During each transaction with the alleged buyers, the Defendant walked into an alleyway, exited, and exchanged items for money. (*Id.* at 13-15). There were a total of six transactions conducted in this fashion. (*Id.* at 13-14). Shortly before the officers arrested the Defendant and his co-defendants, Officer McCauley observed Mr. Santana yelling and running up the block, with Defendant and Ms. Govan subsequently leaving the area. (*Id.* at 15). The police recovered $90 in Mr. Santana his vehicle, $315 on the Defendant, and $57 on Ms. Govan. (*Id.* at 15-16, 25, 90). Officer Fagan also recovered a black bag, which was handed to the Defendant by Mr. Santana, with bundles of crack and cocaine in the alleyway that the Defendant was seen entering and exiting. (*Id.* at 11, 16).

The conduct of the parties and the totality of the circumstances unequivocally underscore the conspiracy finding beyond a reasonable doubt. Circumstantial evidence shows that there was an agreement between Defendant and his co-defendants to intentionally deliver controlled substance to each alleged buyers in exchange for money. An overt act was also done in furtherance of the conspiracy when Ms. Govan was observed working as a lookout, while Mr. Santana supplied the items that Defendant exchanged with all of the alleged buyers.

### ii.    Possession With the Intent to Deliver

Under 35 P.S. § 780-113, "a person who is not authorized by this act will be found guilty for manufacturing, delivering, or possessing with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by

the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." "In order to be convicted of possession with intent to deliver, the Commonwealth must prove beyond a reasonable doubt that that appellant both possessed the controlled substance and had intent to deliver that substance." Commonwealth v. Torres, 617 A.2d 812, 814 (Pa.Super. 1992) (citing Commonwealth v. Parsons, 570 A.2d 1328, 1334 (1990)). The trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case. Commonwealth v. Conaway, 791 A.2d 359, 360 (Pa.Super. 2002). "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." Commonwealth v. Kirkland, 831 A.2d 607, 610 (Pa.Super. 2003).

Where contraband is not found on a defendant's person, the Commonwealth must establish "constructive possession" to support a conviction of possession with the intent to distribute. Commonwealth v. Haskins, 677 A.2d 328 (Pa.Super. 1996). Constructive possession is established by showing that the defendant had the power to control the contraband and the intent to exercise that control. *Id.* The Pennsylvania Supreme Court has held that,

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

Commonwealth v. Hopkins, 67 A.3d 817, 820 appeal denied, 78 A.3d 1090 (Pa.Super. 2013) (citing to Commonwealth v. Brown, 48 A.3d 426, 430 (Pa.Super. 2012)). "As with any other element of a crime, constructive possession may be proven by circumstantial evidence."

Commonwealth v. Haskins, 677 A.2d 328, 330 (Pa.Super.1996). "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." Kirkland, 831 A.2d at 610 (Pa.Super.2003).

In the instant matter, since the police did not find any narcotics on the Defendant's person, the Commonwealth was required to prove that the Defendant constructively possessed the drugs beyond a reasonable doubt. The Perez Court held that because the Commonwealth proved conspiracy, it did not have to prove the defendant's constructive possession of the drugs. Perez, 931 A.2d at 709. In this case, the circumstantial evidence shows that there was an agreement between the Defendant and his co-defendants to intentionally deliver controlled substance to each alleged buyers. Under the totality of the circumstances, Defendant is guilty of conspiracy beyond a reasonable doubt. Therefore, the Commonwealth did not have to prove that the defendant constructively possessed the drugs under Perez.

However, assuming that Perez does not apply, there is sufficient evidence to convict the Defendant of possession with intent to deliver beyond a reasonable doubt. Like McCall and Perez, Officer McCauley testified that he observed the Defendant engage in conversations with multiple alleged buyers, walk into the alleyway, and hand the alleged buyers small objects in exchange for money. (N.T. 04/24/15 at 10-15.). Officer Fagan recovered a black bag containing the narcotics that was hidden in a hole of a brick wall. (*Id.* at 34.). He testified that even though there is a back door to the bar near the alleyway, the bar area is fenced in and one would need to jump the fence to get into the alleyway. (*Id.* at 36-37). Officer McCauley also personally observed the Defendant holding the black bag and entering and exiting the alleyway for the six transactions. (*Id.* at 6-17).

In light of the Defendant's suspicious conduct, the exchange of money for items, and the experienced narcotics officer's observation of the hand-to-hand exchange, there is no doubt that the Defendant constructively possessed controlled substance with the intent to deliver to each alleged buyer. The Defendant exhibited the power to control the contraband and the intent to exercise that control. Considering all circumstantial and direct evidence under the totality of the circumstances, there is sufficient evidence to find the Defendant guilty beyond a reasonable doubt for possession with the intent to distribute a controlled substance.

### iii.    Intentional Possession of a Controlled Substance

Under 35 P.S. § 780-113 (a)(16), one is "prohibited from knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act." In Commonwealth v. Davis, 480 A.2d 1035, 1044 (Pa.Super. 1984), the Superior Court ruled that the trial court properly distinguished between simple possession and possession with intent to deliver. The Court reasoned that the Commonwealth was required to first show possession and then that such possession was coupled the intent to deliver to another. *Id.* The Superior Court found that no error was committed in the trial court's *sua sponte* addition of the simple possession charge. *Id.* In this instant, there was sufficient evidence to find the Defendant guilty of Intentional Possession of Controlled Substance by a Person Not Registered. *Id.* The trial court properly determined that the Defendant knowingly or intentionally constructively possessed the narcotics that were found in the alleyway. (N.T. 04/24/2015 at 32.).

12

**b) The trial court's verdict was not against the weight of evidence.**

Courts have held that "[b]ecause the trial court has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that verdict is against the weight of evidence." Commonwealth v. Widmer, 744 A.2d 745, 753 (2000) (citing to Commonwealth v. Farquharson, 354 A.2d 545 (1976)). "Unlike the challenge of legal sufficiency of the evidence, the complaint that the verdict was against the weight of the evidence requires an assessment of the credibility of the testimony offered by the Commonwealth. It is a rule of this Commonwealth that an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the "cold record." *Id.* Commonwealth v. Hodge, 658 A.2d 386, 389 (Pa.Super. 1995) (citing to Commonwealth v. Farquharson, 354 A.2d 545, 550 (1976)).

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

Commonwealth v. Shaffer, 40 A.3d 1250 (Pa.Super. 2012) (citing to Commonwealth v. Champney, 832 A.2d 403, 409 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)).

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Commonwealth v. Brown, 648 A.2d 1177 (1994).

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not

13

have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Widmer, 744 A.2d at 751-52.

In the case at bar, the trial court's verdict was not against the weight of evidence, and therefore, the Defendant is not entitled to a new trial. Courts have held that the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Widmer, 744 A.2d at 752. Further, the weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. Shaffer, 40 A.3d 1253. Here, the trial court finds Officer McCauley's testimony to be credible, as opposed to the Defendant's testimony. Officer McCauley credibly testified that he personally observed the Defendant engage in six hand to hand transactions with six alleged buyers, while Ms. Govan acted as his lookout and Mr. Santana supplied the Defendant with the black bag that was later recovered with narcotics in it. (N.T. 04/24/15 at 10-15, 32). The trial court's guilty verdict is so not contrary to the evidence as to shock one's sense of justice, and as such, the Defendant is not entitled to a new trial.

14

## CONCLUSION

After review of the applicable statutes, testimony, and case law, there was sufficient evidence to convict the Defendant of the charges beyond a reasonable doubt, and the verdict was not against the weight of evidence. Accordingly, the trial court's judgment of sentence should be affirmed.

BY THE COURT:

_____ J.