J-S16038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CURTIS LEE | : | |
| | : | |
| Appellant | : | No. 1149 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006869-2016

BEFORE:  DUBOW, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 5, 2023**

Appellant Curtis Lee appeals *pro se* from the Judgment of Sentence entered in the Philadelphia Court of Common Pleas following his conviction after a bench trial of Possession with Intent to Deliver (PWID), Knowingly or Intentionally Possessing a Controlled Substance by a Person Not Registered, and Conspiracy to PWID[1] in connection with his role as a look-out for individuals selling illicit drugs in Kensington.  We affirm.

**A**.

We glean the following relevant facts and procedural history from the certified record and the Pa.R.A.P. 1925(a) Opinion, authored by the Hon. Scott DiClaudio.[2]  On the evening of June 2, 2016, Philadelphia Police Officer Robert

---

[1] 35 P.S. §§780-113(A)(30) and (A)(16), 18 Pa.C.S. § 903(a)(1), respectively.

[2] The Hon. Daniel McCaffery, who presided over Appellant's waiver trial, has not participated in the consideration or disposition of this Appeal.

Killman observed Appellant standing on the corner of Weymouth Street and Allegheny Avenue. Xavier Rosa and Julio Martinez were standing approximately 50 feet away selling illicit drugs. Officer Killman observed that when a marked police vehicle would come down Allegheny Avenue, Appellant would shout "Police on Allegheny Avenue."[3] When police vehicles left the area, Appellant would shout "Tambien" to signal that the area was "all clear."[4] Officer Killman also observed Rosa and Martinez conduct hand-to-hand drug transactions with four different customers in which they handed Rosa or Martinez cash in exchange for small items. Following each transaction, police officers stopped the customers and recovered cocaine. After arresting the customers, police officers arrested Appellant, Martinez, and Rosa and recovered heroin, crack, powdered cocaine, and cash from Martinez and Rosa's pockets. Police Officer Donald Vandermay arrested Appellant and recovered $98 from Appellant's pocket.

On June 8, 2017, after waiving his right to a jury,[5] Appellant proceeded to a bench trial at which Officer Killman testified. Appellant presented no evidence. The parties entered stipulations regarding the property and cash seized from the customers, Martinez, Rosa, and Appellant. The court found

---

[3] Tr. Ct. Op., 8/15/22, at 2.

[4] *Id*.

[5] The trial court conducted a thorough jury waiver colloquy with Appellant, and Appellant acknowledged, among other things, that he was pleased with his counsel's representation. *See* N.T. Trial, 6/8/17, at 4-8.

- 2 -

Appellant guilty of the above offenses. The court ordered a pre-sentence investigation ("PSI") and scheduled sentencing for September 8, 2017.[6]

On July 20, 2018, the court held a sentencing hearing at which, *inter alia*, Appellant's attorney agreed that the Offense Gravity Score ("OGS") was six. The court acknowledged the PSI, which included multiple prior felony convictions incurred prior to 1997, and sentenced Appellant to a standard range sentence of two to five years' incarceration followed by five years' probation. Appellant timely filed a post-sentence motion which the court denied.

Following various post-conviction proceedings, including the April 7, 2022 reinstatement of his direct appeal rights *nunc pro tunc*, Appellant filed a timely notice of appeal. Both Appellant and the court compiled with Pa.R.A.P. 1925. Appellant presents the following Statement of Questions Involved:

> Did the trial court erred and/or abuse its discretion when it denied and dismissed all of appellant's post-trial/post-sentence motions without a hearing or any opinions where Appellant suffered from mental illness prior to a non-jury waiver trial and his counsel failed to alert the trial court of the seriousness documented diagnoses mental illness resulting in waiver of Appellant's rights to not be trail while incompetent nor waive his rights knowingly, intelligent, and voluntary of jury trial and where the Commonwealth did not call any of its witness to preliminary hearing nor trial to be

---

[6] On September 8, 2017, the court ordered a mental health evaluation for Appellant to determine competency, and deferred sentencing. On November 17, 2017, the court found Appellant incompetent and, pursuant to Section 304 of the Mental Health Procedures Act, committed Appellant for 30 days to the Detention Center Forensic Unit. The court twice re-committed Appellant to the Forensic Unit after holding additional hearings. Appellant's trial counsel, Douglas Dolfman, Esq., withdrew his representation on April 20, 2018, and Rania Major, Esq., entered her appearance as new counsel on July 20, 2018.

confronted or cross-examined about the evidence **both** **witness** produced and where Appellant did not meet any element of the crime of (PWID) and where the Commonwealth produced known false evidence property receipt C-1 (money), property receipt C-2 (drugs), and where the Commonwealth intentionally did not inform Appellant that there was a (bad cop) investigator who fabricated a false police report resulting in a **Brady** violation, all in order to cover up police brutality where the arresting officer Vandermay who beat and broke Appellant's bones is totally missing from Appellant's case and where Appellant's attorney Douglas Dolfman knew the entire true story of Appellant being brutally beaten up, where attorney Dolfman filed in his Summary of Offense Complaint but secretly withholds the true story at trial intentionally misrepresenting and incriminating his own client at trial, and where no attorney would file any post-trial/post-sentence motions demonstrating his own intentional misrepresentation leading to disbarment.

Appellant's Br. at 4 (verbatim; emphasis in original).

**B**.

Similar to the lack of clarity presented in the above Statement of Question Involved, Appellant's 56-page *pro se* brief is an amalgamation of numerous complaints and legal concepts, with most arguments difficult to discern and presented in a manner which does not comport with our briefing rules.[7] While our review is significantly hampered, we are nonetheless able

---

[7] For instance, the Statement of Questions Involved, quoted above, fails to "state concisely the issues to be resolved," as required by Pa.R.A.P. 2116(a). In addition, Appellant fails to "set forth verbatim" the text of the order from which he seeks review as required by Rule 2115(a). The Summary of Argument is comprised primarily of complaints about trial counsel combined with allegations of police misconduct. It does not comport with Rule 2118, which requires "a concise, but accurate, summary of the arguments presented in support of the issues in the statement of questions involved." Pa.R.A.P 2118. In addition, Appellant has included two sections under headings labeled "Argument."

to discern Appellant's challenges to the sufficiency and weight of the evidence supporting his Conspiracy and PWID convictions[8] and a claim that the court applied the wrong OGS.

### A. Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence supporting his Conspiracy and PWID convictions when he asserts that he "never that day made any contact with any drug seller nor made any drug sales nor passed anything to anybody, [and] Appellant was never even seen talking to anybody that day." Appellant's Br. at 35. He also asserts that the Commonwealth "did not demonstrate no indica [sic], nor evidence, whatsoever that the Appellant spoke with, conspired with or knew any of the co-defendant[s], where Appellant was 60 yards away from the alleged co-defendant at a church food bank." *Id*. at 38. Appellant's arguments have no merit.

---

[8] Appellant's first Argument section and much of his second argument section is comprised of various complaints about trial counsel. *See* Appellant's Br. at 12-35. Except under special circumstances not presented here, ineffective assistance of counsel claims may be raised only on collateral review with the filing of a petition pursuant to the Post Conviction Review Act, 42 Pa.C.S. §§ 9542-46. *Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013). We, thus, decline to address Appellant's claims raised in this direct appeal that are based solely on his complaints about trial counsel's stewardship.

In addition, although Appellant attempts to raise *Brady* and confrontation clause violations, as well as claims asserting prosecutorial and police misconduct, Appellant's arguments are incomprehensible. As a result, we conclude his arguments are undeveloped and, therefore, waived. *Commonwealth v. Charleston*, 94 A.3d 1012, 1021 (Pa. Super. 2014) (concluding that undeveloped arguments are waived).

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Id.*** "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." ***Id.***

Conspiracy is defined in our Crimes Code as follows:

(a) Definition of conspiracy. - A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

"In order to prove the existence of a criminal conspiracy, the Commonwealth must demonstrate that the defendant: (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Chambers*, 188 A.3d 400, 409–10 (Pa. 2018) (citation omitted). "At the heart of every conspiracy lies the common understanding or agreement between the actors. Implicit in any conspiracy is proof that an accused agrees to participate in the alleged criminal activity." *Id.* at 410 (citations, quotation marks, and ellipses omitted). Significantly, "[e]ven if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy." *Commonwealth v. Johnson*, 719 A.2d 778, 785 (Pa. Super. 1998) (*en banc*).

To convict a person of PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. 35 P.S. § 780-113(a)(30). "The intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case. Factors to consider whether the defendant possessed the drugs with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." *Commonwealth v. Conaway*, 791 A.2d 359, 362–63 (Pa. Super. 2002) (citations omitted).

With respect to conspiracy to PWID, it is most often proven with circumstantial evidence. **Commonwealth v. Spotz**, 716 A.2d 580, 592 (Pa. 1998).

> An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for **proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities.** Indeed, a conspiracy may be proven inferentially by showing the relation, conduct, or circumstances of the parties, and **the overt acts of alleged co-conspirators** are competent as proof that a criminal confederation has in fact been formed.

**Chambers**, 188 A.3d at 410 (emphasis added) (citations and quotation marks omitted).

The circumstances upon which the conspiracy may be proven include "the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." **Commonwealth v. Feliciano**, 67 A.3d 19, 26 (Pa. Super. 2013) (*en banc*) (citation omitted). **See also Commonwealth v. Bricker**, 882 A.2d 1008, 1017-18 (Pa. Super. 2005) (affirming PWID conspiracy conviction where overt act was committed by co-conspirator and not the defendant); **Commonwealth v. McCall**, 911 A.2d 992, 997 (Pa. Super. 2006) (affirming PWID and conspiracy convictions where the appellant took "an active role in the illicit enterprise" by acting as a lookout even though he did not "physically handle the drugs transacted.").

In addressing Appellant's sufficiency challenge, the trial court observed the following:

At trial, Officer Killman testified that he witnessed [Appellant] yelling towards Martinez and Rosa "Tambien" to signal that the area was "all clear" or "Police on Allegheny Avenue" when a marked police vehicle would come down Allegheny Avenue. N.T. Trial at 13. Officer Killman also observed four different hand-to-hand transactions between Rosa and/or Martinez and another person in which U.S. currency was exchanged for small items retrieved from Rosa and Martinez's pants pockets. *Id*. at 13-16. All four buyers were stopped and arrested and from all were recovered either cocaine or heroin. Rosa and Martinez were also arrested. They had U.S. currency as well as cocaine and/or heroin on their person.

To convict [Appellant] of conspiracy, the Commonwealth can show through reasonable inferences arising from the facts and circumstances that a tacit agreement exists between the co-conspirat[ors]. *Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa. Super. 2007). Thus, while [Appellant] was not witnessed participating in the hand-to-hand transactions and no controlled substances were recovered from his person, his actions of informing Martinez and Rosa of the presence of marked police cars aided both in the commission of the crime. . . . Thus, the evidence is sufficient to uphold the conviction of Conspiracy PWID.

Trial Ct. Op., 8/15/22, at 11-12.

Our review of the record confirms that the Commonwealth presented sufficient evidence to support Appellant's convictions. Appellant stipulated that the drugs the police officers seized from Martinez and Rosa and their customers were cocaine and heroin. N.T., at 21-25. In addition, Officer Killman testified to his surveillance of Appellant, Martinez, and Rosa, and the circumstances leading up to the arrest of all three. With respect to Appellant's participation as a look-out, Officer Killman's testimony established that Appellant very clearly shouted either "Police on Allegheny" or "Tambien," meaning "all clear," to apprise Martinez and Rosa of police activity in the area. In light of the above evidence, it was reasonable for the fact-finder to infer

that Appellant acted as part of the drug-selling criminal enterprise. Thus, in light of our standard of review, we conclude the Commonwealth presented sufficient evidence to support Appellant's convictions.

### B. Weight of the Evidence

Appellant also purports to challenge the weight of the evidence supporting his convictions by asserting that Officer Killman presented "false evidence and false charges." Appellant's Br. at 40.[9] No relief is warranted.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, 129 A.3d at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the

_____

[9] Appellant also alleges that Officer Killman's testimony was "hearsay." Appellant's Br. at 42. Appellant does not indicate where in the record he asserted a hearsay objection at his trial. Accordingly, it is waived. Pa.R.A.P. 302(a) (issues not raised before the trial court are waived). *See also Commonwealth v. Parker*, 104 A.3d 17, 29 (Pa. Super. 2014) (observing that specific objection to testimony as hearsay is waived on appeal if not preserved at trial).

post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id*. at 545-46. "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* at 546 (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

Here, after reviewing the evidence and stipulations that were presented at trial, the trial court concluded that the verdict did "not shock the conscience." Trial Ct. Op., at 14. Notably, the court observed "[n]o evidence was presented to show that Officer Killman was not credible." *Id*. at 15.

Our review confirms that the trial court did not abuse its discretion in denying Appellant's post-sentence motion. Appellant essentially asks this Court to reweigh the evidence and find Officer Killman's testimony not credible. Our standard of review does not allow us to do so. Moreover, like the trial court, our conscience is not shocked by the verdict. Accordingly, Appellant is entitled to no relief on his weight challenge.

## C. OGS

Appellant asserts that the trial court erred in applying an OGS of 6 instead of 3 and as a result imposed an excessive sentence. Appellant's Br. at 51-52. Without acknowledging that his counsel agreed that the proper OGS was 6, Appellant asserts that the Commonwealth misinformed the court that the OGS was 6 and claims, among other things, that the probation department had indicated the OGS was 3. *Id*.

"A claim that the sentencing court used an incorrect OGS is a challenge to the discretionary aspects of one's sentence." *Commonwealth v. Williams*, 151 A.3d 621, 625 (Pa. Super. 2016) (citation omitted). An appellant raising such a challenge is not entitled to review as of right; rather, a challenge in this regard is properly viewed as a petition for allowance of appeal. 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki*, 522 A.2d 17, 18-19 (Pa. 1987); *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014).

In order to obtain this Court's review, an appellant challenging the discretionary aspects of his sentence must comply with the following requirements: (1) file a timely notice of appeal; (2) preserve the issue at sentencing or in a motion to reconsider and modify sentence; (3) include within his brief a concise statement of the reasons relied upon for allowance of appeal as required by Pa.R.A.P. 2119(f); and (4) raise a substantial question that the sentence is inappropriate under the Sentencing Code. *Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa. Super. 2013).

Here, Appellant timely appealed and preserved his challenge in a post-sentence motion to modify sentence. Appellant has not included a Pa.R.A.P. 2119(f) Statement in his brief, however, the Commonwealth has not objected so we proceed to determine whether Appellant has raised a substantial question.[10]

Appellant's allegation that the sentencing court applied an incorrect OGS resulting in an excessive sentence raises a substantial question. *Commonwealth v. Archer*, 722 A.2d 203, 210-11 (Pa. Super. 1998) (*en banc*). Nevertheless, we conclude Appellant has waived his claim for the following reasons.

First, Appellant has not supported his assertion that the Commonwealth provided misinformation to the court. **See** Pa.R.A.P. 2119(c) (requiring reference to the record).[11] More importantly, Appellant has not informed this Court how the trial court erred in rendering its calculation of an OGS of six. Rather, he baldly asserts that the sentencing court "never even reviewed the [post-sentence] motion" and, thus, abused its discretion. Appellant's Br. at

_____

[10] **See Commonwealth v. Kiesel**, 854 A.2d 530, 533 (Pa. Super. 2004) (noting that "when the appellant has not included a Rule 2119(f) statement and the appellee has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate, or enforce the requirements of Pa.R.A.P. 2119(f) *sua sponte*, *i.e.*, deny allowance of appeal.") (citation omitted).

[11] Although Appellant refers to a copy of a cover sheet purporting to be from the probation department, that document is largely illegible, and we are unable to discern any reference to an OGS.

51. Because Appellant has not presented a developed argument directing our attention to an error in the trial court's analysis, and this Court may not develop an argument for Appellant, we conclude he has waived his challenge.[12] *See Commonwealth v. Freeman*, 128 A.3d 1231, 1249 (Pa. Super. 2015) (observing that "[w]hile this Court may overlook minor defects or omissions in an appellant's brief, we will not act as his or her appellate counsel.") (citation omitted).

In conclusion, applying our standard of review, we conclude the fact-finder's verdicts are supported by sufficient evidence and we discern no abuse of the trial court's discretion in denying Appellant's post-trial motion. Further, Appellant's challenge to the discretionary aspects of his sentence is waived for failing to provide a developed argument regarding trial court error. Accordingly, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judge Murray joins the memorandum.

Judge McCaffery did not participate in the decision.

---

[12] The trial court also addressed Appellant's claim that his sentence exceeded the sentencing guidelines and concluded that the sentence of two to five years did not exceed sentencing guidelines. Tr. Ct. Op., at 21. The trial court observed that "the standard guidelines for a PRS of RFEL and OGS of six is twenty-seven (27) months to forty (40) months[,]" which is "two years and three months to three years and four months plus or minus six months." Tr. Ct. Op., at 21 and n. 6. Appellant has not addressed the trial court's finding except to say that under an OGS of 3, he would have been sentenced to just twelve to 12 to 18 months' minimum incarceration. Appellant's Br. at 52.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/5/2023</u>